**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARGARET TAYLOR GIVENS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 13-00245-KD-N** |
| | ) | |
| **SAXON MORTGAGE SERVICES, INC.** | ) | |
| **and RESIDENTIAL CREDIT SOLUTIONS,** | ) | |
| **INC.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This action is before the Court on the Motions for Summary Judgment (Docs. 48, 51)

filed under Federal Rule of Civil Procedure 56 by Defendants Saxon Mortgage Services, Inc.

("Saxon") and Residential Credit Solutions, Inc. ("RCS"). In support of their respective

motions, Saxon and RCS have filed memorandum briefs (Docs. 48-4, 51-1) and supporting

evidentiary materials (Docs. 48-1 – 48-3; Docs. 51-2 – 51-7; Doc. 52). Plaintiff Margaret

Taylor Givens ("Givens") has timely filed Responses in opposition and supporting evidentiary

material (Docs. 55 - 58), to which Saxon and RCS have timely filed Replies (Docs. 59 – 60).

After the Motions for Summary Judgment were taken under submission, Givens filed a motion

for leave to supplement her response to Saxon's motion (Doc. 61), which the Court granted

(Doc. 62). Saxon timely filed a response to the supplemental briefing. (Doc. 64).

Upon consideration, and for the reasons stated herein, the Court finds that RCS's Motion

for Summary Judgment (Docs. 51) is due to be **GRANTED** and that Saxon's Motion for

Summary Judgment (Doc. 48) is due to be **GRANTED in part** and **DENIED in part**.

**I.    Procedural History**

Givens commenced this action on May 1, 2013, by filing a Complaint (Doc. 1) with the

Court.  After the Court *sua sponte* ordered Givens to address issues regarding subject matter jurisdiction (see Doc. 8), Givens filed her Amended Complaint (Doc. 9), the operative pleading in this action.[1]  See, e.g., Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint.").  The Amended Complaint contains six untitled counts against the Defendants.[2]  To the best of its abilities, the Court determines the claims in these counts to be as follows:

> Count One (against Saxon only) – fraudulent misrepresentation
>
> Count Two (against Saxon and RCS) – fraudulent misrepresentation & suppression
>
> Count Three (against Saxon and RCS) – negligence
>
> Count Four (against Saxon and RCS) – wantonness
>
> Count Five (against Saxon and RCS) – invasion of privacy/publishing false & derogatory information/libel
>
> Count Six (against Saxon and RCS) – demand for accounting[3]

---

[1] Givens has pled sufficient facts establishing that the Court has subject matter jurisdiction over this action based on diversity under 28 U.S.C. § 1332(a).  Givens is alleged to be a citizen of Alabama. Saxon and RCS are both alleged to be corporations incorporated under the laws of, and with their principal places of business in, Texas.  Moreover, the allegations in the Complaint adequately demonstrate that the amount in controversy exceeds $75,000, exclusive of interests and costs.  The Defendants have not challenged the existence of subject matter jurisdiction, and the Court finds nothing in the record to call its jurisdiction into doubt.

[2] Unfortunately, the Amended Complaint is a "shotgun pleading," as it "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief . . . ."  Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006).  The Eleventh Circuit greatly disfavors such pleadings. See, e.g., id. (" '[S]hotgun pleadings wreak havoc on the judicial system.' Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001). Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.").

[3] These determinations comport with the Defendants' statements of the claims at issue (see Doc. 48-4 at 2 ("The Amended Complaint asserts claims for fraud, negligence, wantonness, libel, and for an accounting in relation to certain alleged misconduct by Saxon and RCS."); Doc. 51-1 at 5 ("Plaintiff asserts the following State law counts against RCS: (1) Fraud (Count II); (2) Fraudulent Negligence (Count III); (3) Wantonness (Count IV); (4) Libel (Count V); and (5) Accounting (Count IV [sic]).").  Givens does not dispute the Defendants' characterization of her claims, nor does she dispute that all of her asserted claims are at issue on summary judgment.

Saxon and RCS each answered the Amended Complaint on August 6, 2013, denying liability. (Docs. 16 – 17). The Court subsequently entered a Scheduling Order (Doc. 23) under Federal Rule of Civil Procedure 16(b), which was later modified (Doc. 43). Discovery in this action has been completed, and the motions for summary judgment were timely filed. Saxon and RCS each seeks an entry of summary judgment in its favor on all claims asserted against it in this action.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(a).    Rule 56(c) governs procedures and provides as follows:

(1) ***Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) ***Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) ***Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

(4) ***Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). As the Eleventh Circuit has articulated, however,

> The nature of this responsibility varies . . . depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.
>
> . . . Celotex requires that for issues on which the movant would bear the burden of proof at trial,
>
>> that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come [s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.
>
> [United States v. ]Four Parcels[ of Real Property], 941 F.2d [1428, ]1438[ (11th Cir. 1991)] (citations and internal quotation marks omitted; emphasis in original).
>
> For issues, however, on which the non-movant would bear the burden of proof at trial,
>
>> the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ]-that is, point[ ] out to the district court-that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.
>
> Four Parcels, 941 F.2d at 1437-38 (citations, footnote, and internal quotation

marks omitted; emphasis in original).

If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. Coats & Clark, 929 F.2d at 608. If, however, the movant carries the initial summary judgment burden in one of the ways discussed above, responsibility then devolves upon the non-movant to show the existence of a genuine issue as to the material fact.

For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact. Only if after introduction of the non-movant's evidence, the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial-that is, such that no reasonable jury could find for the non-movant-should the movant be permitted to prevail without a full trial on the issues. Anderson[ v. Liberty Lobby, Inc.], 477 U.S. [242,] 249-50, 106 S. Ct. [2505,] 2511[ (1986)].

For issues on which the non-movant would bear the burden of proof at trial, the means of rebuttal available to the non-movant vary depending on whether the movant put on evidence affirmatively negating the material fact or instead demonstrated an absence of evidence on the issue. Where the movant did the former, then the non-movant must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated. Where the movant did the latter, the non-movant must respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Celotex, 477 U.S. at 332, 106 S. Ct. at 2557 (Brennan, J., dissenting). Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. See Melissa L. Nelkin, One Step Forward, Two Steps Back: Summary Judgment After Celotex, 40 Hastings L.J. 53, 82-83 (1988).

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (headings and footnotes omitted).

The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment.   Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004).   "An issue of fact is

material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." <u>Reeves v. C.H. Robinson Worldwide, Inc.</u>, 594 F.3d 798, 807 (11th Cir. 2010) (en banc) (citation omitted).

If a non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. <u>Celotex</u>, 477 U.S. at 323. In reviewing whether a non-moving party has met its burden, the Court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted).

## III. <u>Facts</u>[4]

On October 3, 2007, Givens and her husband entered into a mortgage with AFC Mortgage for their home place, for an original principal amount of $193,600. Givens and her husband together made monthly payments of $1,454.45 on the mortgage until the husband passed away in April 2008, after which Givens continued making payments herself. The mortgage was later assigned to Saxon. (Doc. 55-2 at 1-2 [Givens Aff.]).

On March 28, 2011, Givens sent a letter to Saxon requesting assistance because she was having trouble staying current on her mortgage payments. (Doc. 55-2 at 2 [Givens Aff.]). Specifically, Givens requested that Saxon "review [her] good credit and good payment history

---

[4] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [Givens,] the nonmoving party." E.g., Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997). As such, these determinations of "fact" are for summary judgment purposes only and may differ from the facts ultimately established at trial. See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994). In addition, the Court notes that

> [p]arties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions. Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995).

Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007) (Steele, J.), aff'd, 279 F. App'x 940 (11th Cir. 2008) (footnote omitted). See also Sharpe v. Global Sec. Int'l, 766 F. Supp. 2d 1272, 1282 (S.D. Ala. 2011) (Steele, C.J.) ("[T]he Court . . . will not independently examine uncited portions of the record in search of support for a particular proposition[ on summary judgment]." (citing cases)); Fed. R. Civ. P. 56(c)(3) (On summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record.").

Finally, the Court notes that, in arguing that no genuine issue of material fact exists, Saxon relies significantly on the representations in the Requests for Admissions it served on Givens, which it asserts are deemed admitted under Federal Rule of Civil Procedure 36(a)(3) due to Givens's failure to timely respond. However, the Magistrate Judge has granted Givens's motion to withdraw or amend those deemed admissions under Federal Rule of Civil Procedure 36(b) (see Doc. 54), and Saxon has not appealed that order. Moreover, prior to Saxon's filing of its motion for summary judgment, the Magistrate Judge made clear that she was "inclined to grant" this relief to Givens but allowed Saxon time to file a brief arguing otherwise (see Doc. 46) – an offer to which Saxon did not respond. Accordingly, the Court disregards any assertions of fact by Saxon that rely solely on Givens's (no longer-)deemed admissions, except those which Saxon indicates Givens has admitted to in her late responses (Doc. 33) to the Requests for Admissions.

and ask that a reduction of [her] interest rate be applied to reduce [her] monthly mortgage payment." (Doc. 55-3 at 1 [Letter dated 3/28/11]).

Saxon denied Givens's application for a mortgage modification through the Home Affordable Modification Plan ("HAMP") [5] due to insufficient information. The same information was resubmitted on August 8, 2011. (Doc. 55-2 at 2 [Givens Aff.]). After resubmitting her information, Givens was "advised in August, 2011 to become delinquent" and was informed by Saxon that HAMP "would only apply if [she] were delinquent and it was best that [she] not make payments to be in default…" (Doc. 55-2 at 2-3 [Givens Aff.]; Doc. 61-1 at 4 [Supp. Givens Aff.]). [6] By certified mail, Saxon sent Givens a Notice of Default and Intent to Accelerate dated August 15, 2014. (Doc. 52-3).

As of September 16, 2011, the principal due on the mortgage was $187,077.78. (Doc.

---

[5]

> During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201–5261. EESA charges the Secretary of the United States Department of the Treasury with acting in a manner that "preserves homeownership and promotes jobs and economic growth." Id. § 5201(2)(B). To this end, the Department of the Treasury created the Making Home Affordable Program, a program that included HAMP.
>
> HAMP is designed to prevent avoidable home foreclosures by incentivizing loan servicers to reduce the required monthly mortgage payments for certain struggling homeowners. Servicers are obliged to abide by guidelines promulgated by the Secretary when determining a mortgagor's eligibility for a permanent loan modification. U.S. Dep't of Treasury, Making Home Affordable Program, Handbook for Servicers of Non–GSE Mortgages at 27 (Dec. 15, 2011). To assure that servicers comply with the guidelines, the Secretary designated Freddie Mac to conduct compliance assessments of HAMP participants. Id.

Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1115-16 (11th Cir. 2012) (*per curiam*).

[6] Givens also claims that this advice "was followed by [an] August 21, 2011 letter indicating that she had to be delinquent..." (Doc. 61-1 at 4 [Supp. Givens Aff.] (citing Doc. 55-3 at 10 [Aug. 21, 2011 Letter from Saxon to Givens])). Upon review of the letter, the Court disagrees with Givens's assertion that the letter indicated she must become delinquent. The letter merely set forth "[s]ome of the options Saxon offers" to help Givens and directed her to call Saxon "to discuss these options []further." (Doc. 55-3 at 10)

55-2 at 3; Doc. 55-3 at 11 [Givens Aff. & Ex. 7-A]).   By letter dated September 23, 2011, Saxon informed Givens that it was continuing to process her HAMP application.   (Doc. 55-2 at 3 [Givens Aff.]; Doc. 55-3 at 12 [Letter]).   However, on September 27, 2011, Saxon sent Givens a letter notice of foreclosure, with notice of the foreclosure also being published in the Mobile Press Register during October 2011.   (Doc. 55-2 at 3; Doc. 55-3 at 13-15 [Givens Aff. & Exs. 9-10]).   Givens retained counsel to stop the foreclosure, which was eventually cancelled by Saxon.   (Doc. 55-2 at 3; Doc 55-3 at 16-19 [Givens Aff. & Exs. 11-12]).   By letter dated October 28, 2011, Saxon informed Givens that she was "approved to enter into a trial period plan under" HAMP, which it stated was "the first step toward qualifying for more affordable mortgage payments" and could lead to a "permanent modification" of her mortgage.   (Doc. 55-2 at 3; Doc. 55-3 at 21-24 [Givens Aff. & Ex. 14]).   During the trial period, Givens was required to make three monthly payments of $1,567.13 from December 2011 – February 2012, which she did.   (Id.).

In February 2012, after completing the trial period, Givens received, executed, and returned a loan modification package from Saxon, including a HAMP modification agreement. Givens had her attorney review the HAMP modification agreement prior to executing it.   In her April 9, 2012 mortgage statement, the principal amount due was $198,912.19, and Givens's monthly payment was $1,552.92.   By separate letter dated April 10, 2012, Saxon informed Givens that the servicing of her mortgage was being transferred to RCS effective May 1, 2012. (Doc. 55-2 at 3-4 & Doc. 55-3 at 25-26 [Givens Aff. & Exs. 15 – 15-A]; Doc. 48-2 at 10 & Doc. 33 at 2 [Admissions by Givens]).

In a letter dated April 30, 2012, Givens requested "a breakdown of [her] mortgage balance" from Saxon.   (Doc. 55-2 at 4; Doc. 55-3 at 27 [Givens Aff. & Ex. 16]).   By letter

dated May 10, 2012, Saxon responded that her HAMP program had been finalized on March 1, 2012, that her total monthly payments were $1,552.92, and that her new principal balance was $199,467.99, which included $12,898.56 in capitalized costs of accrued unpaid interest, escrow advances, and corporate advances. (Doc. 55-2 at 4; Doc. 55-3 at 28 [Givens Aff. & Ex. 17]). Givens made monthly payments in this new amount but demanded a further accounting of the amounts Saxon claimed were due. Givens never received such an account. (Doc. 55-2 at 5 [Givens Aff.]).

Beginning September 20, 2012, Givens began corresponding with RCS, requesting further accounting. RCS responded to these requests, though never to Givens's satisfaction, as she claims she "never received a full and complete accounting as to why or how the principal balance was increased; why [her] escrow account was not credited during the trial period; why 'corporate advances' were made and 'accrued unpaid inters't [sic] had accrued on the loan." (Doc. 57-2 at 3-4 [Givens Aff.]).

IV.    **Analysis**

    a.    **Governing Law**

Before addressing the parties' substantive contentions, the Court must decide what jurisdiction's law governs the claims in this diversity action. "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

Givens asserts only tort claim in this action. For tort claims, "Alabama law follows the traditional conflict-of-law principle[] of … *lex loci delicti* … Under the principle of *lex loci delicti,* an Alabama court will determine the substantive rights of an injured party according to

the law of the state where the injury occurred." Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So. 3d 200, 213 (Ala. 2009) (citations and footnote omitted). The record evidence indicates that any injury suffered by Givens occurred in Alabama. Moreover, all parties rely primarily on Alabama law in making their respective arguments and have not argued for the application of the law of any other jurisdiction. Therefore, the Court will apply Alabama law to the claims in this action.

### b. Claims

Initially, the Court finds that Givens has presented no evidence that would support liability by RCS for any alleged wrongdoing occurring before May 1, 2012, when her mortgage was assigned to RCS.

Additionally, to the extent Givens's state law claims arise from the Defendants purportedly supplying inaccurate information to credit reporting bureaus, such claims are preempted by the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. See Wilson v. Midland Credit Mgmt., Inc., Civil Action No. 09-0277-WS-B, 2009 WL 2059332, at *1-2 (S.D. Ala. July 7, 2009) (Steele, J.) (citing cases).[7]

Finally, Givens appears to argue in support of some claims that the Defendants have improperly applied certain payments. Such arguments appear to be based on nothing more that Givens's subjective, non-expert belief that such payments were misapplied. The fact that she has dressed up these beliefs as affidavit testimony and adorned them with bare citations to certain documentary evidence does not elevate them to something more substantial. Givens has offered no evidence (e.g. expert testimony from an accountant, deposition testimony of Defendants' agents), or even coherent argument, that serves to enlighten the Court on this issue.

---

[7] Givens's efforts to distinguish the application of the Fair Credit Reporting Action as to RCS (see Doc. 58 at 14-15) are confusing, perfunctory, and ultimately unavailing.

Rather, Givens simply points to believed discrepancies and cries foul. The Court declines to serve as Givens's *de facto* accountant and will not sift through the paperwork she has submitted to reconstruct her payment history. Accordingly, the Court rejects any argument by Givens based on alleged improper application of payments.

### 1. Fraud (Counts One & Two)

In Alabama, "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101. "To recover on a claim of fraudulent misrepresentation, see § 6–5–101, Ala. Code 1975, [Givens] must establish four elements: '(1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result.' " Fisher v. Comer Plantation, Inc., 772 So. 2d 455, 463 (Ala. 2000) (quoting Baker v. Bennett, 603 So.2d 928, 935 (Ala. 1992)). Accord, e.g., Ex parte Novartis Pharms. Corp., 991 So. 2d 1263, 1275 (Ala. 2008); McCutchen Co., Inc. v. Media Gen., Inc., 988 So. 2d 998, 1001 (Ala. 2008).

In addition, "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102. "[T]he elements of fraudulent suppression…are: (1) the defendant had a duty to disclose an existing material fact; (2) the defendant concealed or suppressed that material fact; (3) the defendant's suppression induced the plaintiff to act or refrain from acting; and (4) the plaintiff suffered actual damage as a proximate result." E.g., Coilplus-Alabama, Inc. v. Vann, 53 So. 3d 898, 909 (Ala. 2010). "The question whether a party had a duty to disclose is a question of law to be determined by the trial court." Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.,

932 So. 2d 883, 891 (Ala. 2005) (quotations omitted).

"A plaintiff's purported reliance in an action alleging misrepresentation or suppression must be reasonable: ' "[T]he right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances." ' " Sandoz, Inc. v. State, 100 So. 3d 514, 527 (Ala. 2012) (quoting AmerUs Life Ins. Co. v. Smith, 5 So. 3d 1200, 1207 (Ala. 2008) (quoting Torres v. State Farm Fire & Cas. Co., 438 So. 2d 757, 759 (Ala. 1983))).  "[A] plaintiff in a suppression case must prove that she was induced to act by her reasonable reliance on the state of affairs as it appeared in the absence of the suppressed information and that she suffered an *actual* injury *as a result* of the suppression." Houston Cnty. Health Care Auth. v. Williams, 961 So. 2d 795, 814 (Ala. 2006) (internal citations omitted).

"In Foremost Ins. Co. v. Parham, 693 So. 2d 409, 421 (Ala.1997), the Alabama Supreme Court returned to an objective standard for evaluating fraud claims and imposed a 'general duty on the part of a person to read the documents received in connection with a particular transaction.' " Sirmon v. Wyndham Vacation Resorts, Inc., 922 F. Supp. 2d 1261, 1272 (N.D. Ala. 2013) (Coogler, J.). Foremost held that, "with regard to a fraud claim, a 'trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.' The Foremost Court also recognized a plaintiff's 'general duty ... to read the documents received in connection with a particular transaction,' along with a duty to inquire and investigate." Alfa Life Ins. Corp. v. Colza, No. 1111415, 2014 WL 1874703, at

*10 (Ala. May 9, 2014) (quoting <u>Foremost</u>, 693 So. 2d at 421) (internal citation omitted) (not yet released for publication). The Alabama Supreme Court has "since applied <u>Foremost</u> in numerous cases to justify a judgment as a matter of law when plaintiffs have ignored clear written terms in documents provided them in association with a transaction[,]" <u>id.</u>, and "has consistently held that a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral representations that contradict the written terms in the documents." <u>AmerUs Life Ins. Co. v. Smith</u>, 5 So. 3d 1200, 1208 (Ala. 2008). <u>See also</u> <u>Colza</u>, 2014 WL 1874703, at *11 (Through <u>Foremost</u> and its progeny, the Alabama Supreme Court has "essentially held that it is almost never reasonable for an individual to ignore the contents of documents given him or her in association with a transaction.").

Givens claims that "for a period of months she received notifications from Saxon that the modification process would benefit her financially, and would assist her in making the monthly payments…" (Doc. 56 at 6). Givens claims that she "executed the modification package based on previous representations that the interest rate and payments would be reduced as that was the purpose of the modification of the mortgage in the first instance." (Doc. 55-2 at 4 [Givens Aff.]). Purportedly, only after she executed the HAMP modification agreement did Givens discover that "the mortgage had in fact been increased in its balance as well as payments and interest rate…" (<u>Id.</u> at 7). However, all of these increases were clearly set forth in the modification agreement (Doc. 48-2 at 22-31). Specifically, pages 3 and 4 of the modification agreement read, in relevant part, as follows:

> 3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on March 1, 2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on *March* 1, 2012.

A. The Maturity Date will be: November 1, 2037

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees. escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $199,467.99 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 5.875% will begin to accrue on the New Principal Balance as of February 1, 2012 and the first new monthly payment on the New Principal Balance will be due on March 1, 2012. My payment schedule for the modified Loan is as follows:

…

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment" | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-26 | 5.875% | 02/01/2012 | $1,253.78 | $299.14, may adjust periodically | $1,552.92, may adjust periodically | 03/01/2012 | 309 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

(Doc. 48-2 at 24-25).

The plain terms of the agreement contradict Givens's purported belief, based on Saxon's alleged misrepresentations and/or due to allegedly suppressed information, that her interest rate and mortgage payments would be reduced. Faced with contract terms that did not comport with previous representations and her purported understanding of the state of affairs at the time, Givens had "a duty to inquire and investigate" these inconsistencies. Colza, 2014 WL 1874703, at *10. The undisputed evidence, however, indicates that Givens, while "fully capable of reading and understanding" the terms of the HAMP modification agreement, "nonetheless made a deliberate decision to ignore [those ]written contract terms" in favor of previous purported representations by Saxon. Foremost, 693 So. 2d at 421. Thus, Givens cannot now claim that she reasonably relied on any purported misrepresentations by Saxon, or on

her understanding of the state of affairs at the time, in accepting and signing the modification agreement. Givens herself admits she was mailed the modification agreement, had a period of time to examine it, and had her attorney review the agreement prior to executing it, further supporting the determination that any reliance on previous representations inconsistent with the terms of the agreement was unreasonable.

However, "[i]n Potter v. First Real Estate Co., 844 So. 2d 540, 548–51 (Ala. 2002), [the Alabama Supreme Court] noted that the general rule [that a plaintiff's reliance on the representations of a defendant is unreasonable when the plaintiff was in possession of documents the plaintiff could have read that were inconsistent with the statements on which the plaintiff alleges he relied ]may be avoided when there have been misrepresentations regarding the contents of a document and there are special circumstances, a special relationship between the parties, or the plaintiff suffers from a disability rendering him or her unable to discern the contents of the document." Alfa Life Ins., 2014 WL 1874703, at n.8. See also AmerUs Life Ins. Co. v. Smith, 5 So. 3d 1200, 1209-10 (Ala. 2008) (Discussing Potter as the "one exception to the general rule that a plaintiff's reliance on the representations of a defendant is unreasonable when the plaintiff was in possession of documents the plaintiff could have read that were inconsistent with the statements on which the plaintiff alleges he relied."). Potter held that "it is consistent with Foremost to recognize a jury question in a fraud case where the plaintiff's ignorance of the contents of a document is reasonable under the circumstances." 844 So. 2d at 549.

> In Potter..., the plaintiffs' real-estate agent told them that she represented them as buyers as much as she represented the sellers of the property the plaintiffs were purchasing. Nevertheless, when she was asked whether the property being purchased was in a flood plain, the agent stated that it was not, showing the plaintiffs an almost illegible survey. The sales contract stated that the property was not in a flood plain. At the closing, the plaintiffs were provided with another

copy of the survey, and the agent again assured them that the property was not in a flood plain, contrary to what appeared in a document presented at closing. Under those circumstances, [the Alabama Supreme Court] concluded that there was evidence of a special relationship between the plaintiffs and their acknowledged real-estate agent, together with evidence indicating that the agent had employed an artifice at the closing that lulled the plaintiffs into a false sense of security as to the contents of a document the plaintiffs were unable to read.

AmerUs Life, 5 So. 3d at 1210.

"Under Alabama law, a mortgage lender does not owe the borrower a general fiduciary duty." Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1110 (11th Cir. 2014). Givens has made no argument that she enjoyed a "special relationship" with Saxon beyond that of mortgagor and mortgagee. Givens also "offer[s] no rationale why Alabama law would treat mortgage servicers[ such as RCS] differently than mortgagees for purposes of this principle[,]" and she "advance[s] no facts showing any kind of special relationship between [her] and [RCS], much less any legal authority or persuasive reason to believe that Alabama law would impute a fiduciary duty to a loan servicer such as [RCS] even as it steadfastly refuses to impose such a duty on a mortgagee. Abundant authority from across the country is to the contrary." Selman v. CitiMortgage, Inc., Civil Action No. 12-0441-WS-B, 2013 WL 838193, at *10 & n.14 (S.D. Ala. Mar. 5, 2013) (Steele, C.J.) (citing cases). Moreover, even assuming a special relationship between Givens and the Defendants exists, Givens has not presented evidence that misrepresentations were made at the time the modification agreement was delivered to Givens for signing, or at the time she executed it, further distinguishing this action from Potter. See AmerUs Life, 5 So. 3d at 1210.

Givens appears to argue that she can show "special circumstances" excusing any failure on her part to read and investigate the terms of the modification agreement because she can demonstrate "economic duress" as set forth in International Paper Co. v. Whilden, 469 So. 2d

560, 562 (Ala. 1985).   Givens argues that Saxon used its knowledge that she was in financial distress and the threat of foreclosure, which caused her to expend additional costs, to coerce her into signing the modification agreement without reading it.

> The defense of economic distress has three essential elements: "(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." Clark v. Liberty Nat'l Life Ins. Co., 592 So. 2d 564, 567 (Ala.1992) (quotations & citations omitted) (brackets in original). The doctrine "applies only to special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto." Int'l Paper Co. v. Whilden, 469 So.2d 560, 563 (Ala.1985) (quotations & citations omitted). The Alabama Supreme Court explained, however, that:
>
>> economic duress must be based on conduct of the opposite party and not merely on the necessities of the purported victim. The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress.
>
> Id. (quotations & citations omitted); see Newburn, 657 So.2d at 852 ("[T]he 'wrongful act' prong of the test for economic duress is not satisfied unless the victim has acted in response to unlawful or unconscionable pressure."). In addition to showing a wrongful act, "the victim must show that he had no reasonable alternative but to agree to the other party's terms or face serious financial hardship." Int'l Paper, 469 So.2d at 563.

Edwards v. Kia Motors of Am., Inc., 486 F.3d 1229, 1235-36 (11th Cir. 2007).

First, under Alabama law, the "economic duress" doctrine has only been applied as a defense to a claim for breach of contract and has not been extended to tort claims.[8]   See Burns

---

[8] Fraudulent misrepresentation and suppression are torts under Alabama law.   See Smith v. J.H. Berry Realty Co., Inc., 528 So. 2d 314, 316 (Ala. 1988) (listing "[t]he elements of the tort of fraudulent misrepresentation…"); State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 837 (Ala. 1998) (discussing "[t]he tort of fraudulent suppression…").

v. Sealy Ins. Agency, Inc., 545 So. 2d 763, 765 (Ala. 1989) ("[W]e are unwilling, as we were unwilling in Guillot v. Beltone Electronics Corp., 540 So.2d 648 (Ala. 1988), to allow a cause of action for duress based upon these facts. As did the Guillots, Burns cites International Paper Co. v. Whilden, 469 So. 2d 560 (Ala. 1985), as authority to support his duress claim. As we pointed out in Guillot, the defendant in International Paper pleaded economic duress as a *defense* and was permitted to avoid the contract. Burns's action sounds in tort."); Cahaba Seafood, Inc. v. Cent. Bank of the S., 567 So. 2d 1304, 1306 (Ala. 1990) ("[W]e have heretofore refused to recognize economic duress as an independent tort. We reaffirm that refusal. See Guillot v. Beltone Electronics Corp., 540 So. 2d 648 (Ala. 1988)).

Second, Givens has failed to present any evidence that Saxon exerted "unlawful or unconscionable pressure" to induce Givens to sign the modification agreement without first reading it and inquiring as to any inconsistencies. In this same vein, Givens has also failed to demonstrate why she had no reasonable alternative but to enter into the modification agreement without first reading it. In sum, Givens has failed to show that any purported "economic duress" inflicted by Saxon should constitute a "special circumstance" under Potter in this action.[9]

As such, the Court finds that Givens's claims of fraudulent misrepresentation and suppression fail as a matter of law to the extent she claims she was induced to enter into the modification agreement, as any reliance on previous representations by Saxon regarding the interest rate on the modified loan, or on Givens's purported understanding of the state of affairs

---

[9] To the extent Givens now attempts to assert a claim for rescission/reformation due to economic duress, the Court declines to entertain it at this stage, as such a claim has not been pled in the Amended Complaint (Doc. 9). See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Givens has pled rescission and reformation only as part of the relief requested on her fraud claim in Count One. (see Doc. 9 at 6).

at the time, was unreasonable when they conflicted with the clear terms of the modification agreement.

However, the Court finds that there are genuine issues of material fact as to whether Givens was fraudulently induced initially to enter into the loan modification process. Specifically, in a light most favorable to Givens, there is evidence that Saxon initially told her the HAMP modification would benefit her financially and that it would be best if she were three months in arrears so she would qualify.[10]    This information induced her to enter into the HAMP modification process and the trial period plan.    Ultimately, the statement that the HAMP modification would benefit her financially proved to be false, leaving Givens in the undesirable position of choosing between signing the HAMP modification agreement and facing foreclosure once again.    Givens has suffered damages as a result, including attorneys' fees and costs associated with halting her foreclosure.    Thus, the Court finds that Givens has met her burden to avoid summary judgment on this claim.

However, the undisputed evidence indicates that RCS took no part in the foreclosure proceedings or the HAMP modification process, and Givens has presented no evidence indicating that Saxon and RCS acted in concert to defraud her.

In sum, the Court finds that the Defendants' motions for summary judgment are due to be **GRANTED** as to Counts One and Two of the Amended Complaint, except as to Givens's claim that Saxon fraudulently induced her initially to enter into the loan modification program.

---

[10]  (See Doc. 55-2 at 2-3 [Givens Aff.] ("Saxon then denied the application for mortgage modification through the Home Affordable Modification Plan due to insufficient information and, as Affiant had already submitted that information, the same information was resubmitted August 8, 2011…at which time Affiant received assurance that the Home Affordable Modification Plan would only apply if I were delinquent and it was best that I not make payments to be in default, at the direction of Saxon…"); Doc. 55-3 at 21 [Oct. 28, 2011 Letter from Saxon] ("You are approved to enter into a trial period plan under the Home Affordable Modification Program.   This is the first step toward qualifying for more affordable mortgage payments.")).

## 2. Negligence & Wantonness (Counts Three & Four)

In Count Three of the Amended Complaint, Givens alleges that the Defendants committed "negligence" by "failing and refusing to produce a proper accounting and inflating the mortgage indebtedness, reporting a balance owed nearly double the amount of the principal balance of the mortgage to the credit reporting agencies,[11] and failing to credit Mrs. Givens with proper payments made in a timely fashion[,]" with said actions also allegedly constituting "wanton misconduct" in Count Four due to "repeated notices by Margaret Taylor Givens and her attorney requesting a full and complete accounting of the mortgage indebtedness and reporting a balance owed on mortgage indebtedness in double the amount actually owed..." (Doc. 9 at 8-9).

> Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract. Indeed, "a negligent failure to perform a contract ... is but a breach of the contract." Vines v. Crescent Transit Co., 264 Ala. 114, 85 So. 2d 436, 440 (1956); see also Barber v. Business Prods. Ctr., 677 So. 2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort")[12]; Am. Dist. Tel. Co. of Ala. v. Roberts & Son, 219 Ala. 595, 122 So. 837, 840 (1929) (holding plaintiff cannot maintain tort action where alleged negligence consists of failure to perform a contractual obligation). A plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage. Vines, 85 So.2d at 440.

Blake v. Bank of Am., N.A., 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (Fuller, J.). See also Marsh v. S. Airways, Inc., 316 F.2d 91 (5th Cir. 1963) (discussing Vines and similar Alabama cases).

---

[11] This state law claim is preempted by the Fair Credit Reporting Act. See Wilson, 2009 WL 2059332, at *1-2 (S.D. Ala. July 7, 2009) (and the cases cited therein).

[12] Barber applied this rule to a claim of wantonness. See 677 So. 2d at 228 ("What constitutes wantonness depends entirely upon the facts presented in a particular case…However, a mere failure to perform a contractual obligation is not a tort."). The Court notes that Barber was later overruled on other grounds by White Sands Group, LLC v. PRSII, LLC, 32 So. 3d 5 (Ala. 2009).

The undersigned has applied such a rule in finding that a mortgage owner cannot be sued for negligent or wanton servicing of a mortgage under Alabama law:

> Freddie Mac was the owner of the mortgage and note executed by Webb…Freddie Mac's duty to service the mortgage properly, *i.e,* duty to collect and properly credit Webb's payments to her account and duty not to impose charges in violation of the mortgage agreement, arose from the mortgage and note. In that regard, "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by a contract." McClung v. Mortgage Electronic Registration Systems, Inc., 2012 WL 1642209, *7 (N.D. Ala.2012) (citation and internal quotations omitted); see also Barber v. Bus. Prods. Ctr., Inc., 677 So. 2d 223, 228 (Ala. 1996), overruled on other grounds by White Sands Grp., LLC v. PRSII, LLC, 32 So. 3d 5 (Ala. 2009) ("a mere failure to perform a contractual obligation is not a tort"). Therefore, because Alabama does not recognize a tort cause of action for breach of a contractual duty, summary judgment is GRANTED in favor of Freddie Mac as to Webb's claims for negligent and wanton servicing of the mortgage.

Webb v. Ocwen Loan Servicing, LLC, Civil Action No. 11-00732-KD-M, 2012 WL 5906729, at *6 (S.D. Ala. Nov. 26, 2012) (DuBose, J.).   Accordingly, Givens's claims for negligence and wantonness against Saxon for failing to properly credit Givens with payments must fail because this is essentially alleging a breach of contract.

As the mortgage servicer, RCS is in a different position.   However, as the Defendants correctly point out,

> numerous recent authorities have held that Alabama law does not recognize a cause of action for negligent or wanton servicing of a mortgage that results in economic damages. See Wallace v. SunTrust Mortg., Inc., —— F. Supp. 2d ——, 2013 WL 5422799, *9 (S.D. Ala. Sept. 26, 2013) ("Recent federal precedent interpreting Alabama law has uniformly found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law, at least in the absence of personal injury or property damage...."); Selman v. CitiMortgage, Inc., 2013 WL 838193, *5 (S.D. Ala. Mar. 5, 2013) (same); Webb v. Ocwen Loan Servicing LLC, 2012 WL 5906729, *7 (S.D. Ala. Nov. 26, 2012) ("under Alabama law a cause of action for negligent servicing of a mortgage against Ocwen cannot be maintained where the damages are economic"); Deutsche Bank Trust Company Americas v. Garst, 2013 WL 4851493, *9 (N.D.

Ala. Sept. 11, 2013) (recognizing and joining "emerging consensus that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing," because claims related to performance under a mortgage agreement must be brought under contract law, damages for mortgage servicing are typically economic, and there is a "plethora of alternative avenues for relief in 'negligent mortgage servicing' cases") (citation and internal quotation marks omitted); Costine v. BAC Home Loans, 946 F. Supp. 2d 1224, 1234 (N.D. Ala.2013) ("The Court agrees with the Middle District of Alabama's recent assessment that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.") (citations and internal quotation marks omitted); Buckentin v. SunTrust Mortg. Corp., 928 F. Supp. 2d 1273, 1290 (N.D. Ala. 2013) ("Any obligations Defendant owed to Plaintiffs arose from the mortgage agreement, not from the duty of reasonable care generally owed to members of the public.... Plaintiffs' negligence and wantonness claims are not actionable under Alabama law."); Blake v. Bank of America, N.A., 845 F. Supp. 2d 1206, 1210–11 (M.D. Ala. 2012) ("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing"). "These decisions soundly reject the availability of negligence or wantonness claims under Alabama law in circumstances similar to those before this Court, and emphasize that mortgage servicing obligations are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public." Wallace, 2013 WL 5422799 at *9.

Quinn v. Deutsche Bank Nat. Trust Co., Civil Action No. 13-0115-WS-C, 2014 WL 977632, at *6 (S.D. Ala. Mar. 12, 2014) (Steele, C.J.).

"To be sure, this line of cases leaves open the possibility of a cognizable claim for negligent/wanton mortgage servicing in cases involving personal injury or property damage." Id., n.17.   See also Forester v. Bank of Am., N.A., Civil Action No. 11-0160-CG-M, 2012 WL 3206471, at * (S.D. Ala. Aug. 7, 2012) (Granade, J.) ("Alabama law 'does not permit Plaintiffs to assert a tort claim against Defendants for their purported breach of a contract' where only economic loss is alleged. McClung v. Mortgage Electronic Registration Systems, Inc., 2012 WL 1642209 at *8 (N.D. Ala. 2012). 'Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of

a breach of the duty of reasonable care. Pure economic loss—which is what [Forester] claims—does not suffice.' Blake v. Bank of America, N.A., 2012 WL 607976 (M.D. Ala. Feb. 27, 2012) (*citing* Restatement (Second) of Agency § 357 (1958) ('An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed.').").

Givens points out that she has alleged, and presented evidence of, personal injury in the form of mental anguish. However, "[t]his allegation does not save [her negligence claims] by bringing 'personal injury' damages into play. After all, Alabama law forbids '[d]amages for mental anguish ... for negligence except when the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct.' Brown v. First Federal Bank, 95 So. 3d 803, 818 (Ala. Civ. App. 2012); see also AALAR, Ltd., Inc. v. Francis, 716 So. 2d 1141, 1147 (Ala. 1998) (explaining that Alabama law 'limits recovery for emotional injury to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct'). [Givens]'s allegations in h[er] pleading do not satisfy this threshold, and [s]he has identified no evidence in the summary judgment record that would do so; therefore, mental anguish damages are unavailable with respect to [her negligence claims]."[13] Quinn, 2014 WL 977632, at n.17. See also Wallace v. SunTrust Mortgage, Inc., 974 F. Supp. 2d 1358, 1370 (S.D. Ala. 2013) (Granade, J.) ("While Wallace alleges that SunTrust's negligence and wantonness has caused mental anguish, she has failed to assert any facts suggesting that she has suffered physical injury or experienced an immediate risk of physical injury on account of

---

[13] Quinn actually applied this holding to claims of negligent and wanton servicing of a mortgage. However, as discussed *infra*, Alabama law may allow mental anguish damages without a showing of physical injury or imminent danger for a claim of wantonness.

SunTrust's conduct such that it could be liable for the torts of negligence or wantonness. See Brown v. First Federal Bank, 95 So.3d 803, 818 (Ala. Civ. App. 2012) ('Damages for mental anguish are not recoverable for negligence except where the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct.').").

Wantonness, however, is a separate issue. The Alabama Court of Civil Appeals recently held that while proof of physical injury or being placed in immediate risk of physical injury is required to recover mental anguish damages on a claim for negligence, such proof is not required for mental anguish damages on a wantonness claim. See Brown v. First Fed. Bank, 95 So. 3d 803, 817-18 (Ala. Civ. App. 2012), reh'g denied (May 18, 2012). However, even assuming that Givens's assertion of mental anguish alone is sufficient to state a claim for wantonness, the Court finds that she has failed to present sufficient evidence creating a genuine issue of material fact as to whether RCS acted wantonly.

> "Wantonness" is statutorily defined[ in Alabama] as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975, § 6–11–20(b)(3). "Wantonness" has been defined…as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala. 1994). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff. Joseph v. Staggs, 519 So. 2d 952 (Ala. 1988).

Alfa Mut. Ins. Co. v. Roush, 723 So. 2d 1250, 1256 (Ala. 1998) (overruling in part Lynn Strickland Sales & Service, Inc. v. Aero–Lane Fabricators, Inc., 510 So. 2d 142, 145 (Ala. 1987)). Accord Lance, Inc. v. Ramanauskas, 731 So. 2d 1204, 1211 (Ala. 1999). See also Galaxy Cable, Inc. v. Davis, 58 So. 3d 93, 101 (Ala. 2010) (" 'To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences,

consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains.' " (quoting <u>Martin v. Arnold</u>, 643 So. 2d 564, 567 (Ala. 1994))).

> [W]hen determining if a defendant's actions constitute wanton conduct, it is important for the court to distinguish between wantonness and negligence.

>> " ' "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, *or with consciousness, that the doing or not doing of some act will likely result in injury* ....

>> " ' "Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as ... a conscious ... act. 'Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.' <u>McNeil v. Munson S.S. Lines</u>, 184 Ala. 420, [423], 63 So. 992 (1913)...." ' "

> <u>Tolbert v. Tolbert</u>, 903 So. 2d 103, 114–15 (Ala. 2004) (quoting <u>Ex parte Anderson</u>, 682 So. 2d 467, 470 (Ala.1996), quoting in turn <u>Lynn Strickland Sales & Serv., Inc. v. Aero–Lane Fabricators, Inc.</u>, 510 So. 2d 142, 145–46 (Ala. 1987)) (emphasis added).

> The determination whether a defendant's acts constitute wanton conduct depends on the facts in each particular case. <u>Ex parte Anderson</u>, 682 So.2d at 470.

<u>Ex parte Essary</u>, 992 So. 2d 5, 9-10 (Ala. 2007).

"Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." <u>Cash v. Caldwell</u>, 603 So. 2d 1001, 1003 (Ala. 1992). "The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference…[I]t may not be left to

the conjecture or speculation of the jury." Roberts v. Brown, 384 So. 2d 1047, 1048 (Ala. 1980). See also Klaber by & through Klaber v. Elliott, 533 So. 2d 576, 579 (Ala. 1988) ("Knowledge need not be proven directly but may be inferred from the facts of the case.").

Givens has failed to present sufficient evidence demonstrating an issue of fact as to whether RCS acted wantonly in servicing her mortgage. The undisputed evidence indicates that RCS repeatedly responded to Givens's request for information regarding accountings, application of payments, etc. While Givens was obviously not satisfied with RCS's responses and disagreed with many of them, she has presented nothing but conclusory assertions that RCS "consciously and intentionally did some wrongful act or omitted some known duty…" Galaxy Cable, 58 So. 3d at 101. Moreover, Givens has failed to demonstrate how any alleged wantonness by RCS caused her injury, as Givens was already obligated by the mortgage and the HAMP modification agreement to continue making monthly payments.

Accordingly, the Court finds that the Defendants' motions for summary judgment are due to be **GRANTED** as to Counts Three and Four of the Amended Complaint.

### 3. Libel/False Light (Count Five)

Givens's claim in this count arises out of the Defendants' alleged actions which "intentionally and deliberately caused to be published to third parties, namely credit reporting agencies, false information relative to [her] credit…" (Doc. 9 at 10, ¶ 29). The Fair Credit Reporting Act preempts this state law claim. See Wilson, 2009 WL 2059332, at *1-2 (and the cases cited therein). Moreover, Givens has failed to respond to the Defendants' arguments regarding this claim. Thus, she has abandoned her claim in Count Five. See Mosley v. Ala. Unified Judicial Sys., Admin. Office of Courts, No. 13-12933, 2014 WL 1345112, at *3 (11th Cir. Apr. 7, 2014) (unpublished) ("Although they did not specifically describe the Title VII claim

of discrimination as being against 'black females,' the Defendants did state that '[n]either race nor gender was a factor' in the selection of the CJPO. At that point, Mosley was obligated to respond to the Defendants' denial of race or gender discrimination as to the filling of the CJPO position, or face abandonment of the issue. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (holding a non-movant's silence on an issue after a movant raises the issue in a summary judgment motion is construed as an abandonment of the claim)."); Fischer v. Fed. Bureau of Prisons, 349 F. App'x 372, 375 n.2 (11th Cir. 2009) ("Fischer has waived any claim related to the blood clotting in his leg because he did not address that issue in response to Dr. Tidwell's motion for summary judgment." (citing Transamerica Leasing, Inc. v. Inst. of London Underwriters, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001)).    As such, the Court finds that the Defendants' motions for summary judgment are due to be **GRANTED** as to Count Five of the Amended Complaint.

### 4.    Accounting (Count Six)

There are a variety of reasons why an Alabama court may grant an accounting. See Ally Windsor Howell, Tilley's Alabama Equity § 24:2 Basis for Ordering an Equitable Accounting (5th ed. 2012). Circumstances when an accounting has been deemed appropriate include situations where there exists a fiduciary relationship between the parities and under which the duty to keep account arises, Leslie v. Pine Crest Homes, Inc., 388 So.2d 178 (Ala. 1980); when the defendant has engaged in fraud or wrongdoing sufficient to give rise to a duty to account, Tolleson v. Henson, 93 So. 458 (1922); and when necessity for discovery of matters wholly within the defendant's knowledge renders an accounting an appropriate remedy, Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 101 So. 2d 78 (1957); Orkin Exterminating Co. of North Ala. v. Krawcheck, 123 So.2d 149 (1960).

Sirmon v. Wyndham Vacation Resorts, Inc., 7:10-CV-2717-LSC, 2012 WL 4341819 (N.D. Ala. Sept. 18, 2012).

As explained *supra*, no fiduciary relationship exists between Givens and the Defendants, and the record indicates that Givens was provided several accountings prior to the commencement of this action and has been provided additional information in briefing the pending motions. "Equitable accounting has been ordered…when an account is so difficult and complicated that relief at law is inadequate." Ally Windsor Howell, Tilley's Alabama Equity, § 24:2. Basis for ordering an equitable accounting (5th ed.). However, "[a]n account is not complicated merely because it involves a large number of items[,]" id., and Givens has failed to demonstrate how hers would be more complicated than any other mortgage. "When the equitable jurisdiction of the trial court is invoked, the trial court has much discretion in determining whether to order an accounting." McDuffie v. Holland, 690 So. 2d 386, 390 (Ala. Civ. App. 1996) (citing Ex parte Deaton, 8 So. 2d 819 (1942)). As Givens has not succeeded on any of her other claims against RCS, and no other basis for ordering one being apparent, the Court finds that Givens is not due an equitable accounting from RCS. Moreover, based on the nature of the remaining claim against Saxon (i.e. for alleged misrepresentations that occurred prior to modification of the loan), it would not appear that an accounting would be an appropriate remedy. However, the Court reserves judgment on the issue as to Saxon.

Accordingly, the Court finds that, as to Count Six of the Amended Complaint, RCS's motion for summary judgment is due to be **GRANTED** and Saxon's motion for summary judgment is due to be **DENIED**.

## V.    Conclusion[14]

In accordance with the foregoing analysis, it is **ORDERED** as follows:

- RCS's Motion for Summary Judgment (Doc. 51) is **GRANTED**, and

---

[14] The practice of filing motions to reconsider has become commonplace. Considering the heightened burden that must be met for the Court to reconsider, the Court has found most motions to reconsider to be a waste of the Court's and the parties' resources.

- Saxon's Motion for Summary Judgment (Doc. 48) is **DENIED** as to Counts One and Two of the Amended Complaint <u>only</u> to the extent Givens claims she was fraudulently induced to enter into the HAMP modification process, is **DENIED** as to Count Six of the Amended Complaint, and is otherwise **GRANTED**.

**DONE** and **ORDERED** this the **30**[th] day of **May 2014**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**